1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10
11  LANGER JUICE COMPANY, INC., )   CV 13-6323 RSWL (AJWx)
                                )
12            Plaintiff,        )
       v.                       )   **Order re: Defendant's**
13                              )   **Motion to Dismiss**
    STONHARD, STONCOR GROUP,    )   **Pursuant to Fed. R. Civ.**
14  INC., et al.                )   **P. 12(b)(6) [10]**
                                )
15                              )
                                )
16            Defendants.       )
                                )
17                              )
                                )
18                              )
                                )
19  _____  )

20      Currently before the Court is Defendant StonCor

21  Group, Inc. t/a Stonhard's ("Defendant") Motion to

22  Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [10].

23  Plaintiff Langer Juice Company, Inc. ("Plaintiff")

24  filed its Opposition on November 26, 2013 [21].

25  Defendant filed its Reply on December 3, 2013 [24].

26  Having reviewed all papers submitted pertaining to the

27  Motion, and having considered all arguments presented

28  to the Court, the Court **NOW FINDS AND RULES AS FOLLOWS:**

Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

## I. Background

Plaintiff is a California corporation with its principal place of business in the City of Industry, California. First Amended Compl. ("FAC") ¶ 1. Defendant is a New Jersey corporation. Id. at ¶ 3.

On November 16, 2013, Plaintiff entered into a contract (the "Contract") with Defendant wherein Defendant was to perform work on the "Outside Area Floor" at a property located in Bakersfield, California (the "Bakersfield Property"). Id. at ¶¶ 6, 10. Pursuant to the Contract, a four-component, trowel applied, polyurethane mortar system was to be applied to the "Outside Area Floor" at the Bakersfield Property. Id. at ¶ 10. The system was to be sealed with a high performance, chemically resistant urethane sealer that would include texture for slip resistance. Id.

The original contract price was $21,255.00, but several change orders were implemented after the Parties entered into the Contract, ultimately doubling the cost of the project. Id. at ¶¶ 11-12.

As a result of Defendant's performance of the Contract work, however, the Outside Area Floor at the Bakersfield Property suffers from holes where water ponds, the floor has blistered, and its coloring has faded. Id. at ¶ 15. Plaintiff timely notified

Defendant of these issues with respect to Defendant's work at the Bakersfield Property.  Id. at ¶ 16. Accordingly, on April 18, 2013, Defendant advised Plaintiff that it would perform certain repairs.  Id. at ¶ 17.

These repairs were ineffective, and Plaintiff again contacted Defendant to remedy the issue.  Plaintiff was unsuccessful in getting Defendant to do so.  Id. at ¶ 18.

On June 24, 2013, Defendant notified Plaintiff that it would redo the entire flooring that was subject to the original contract for $108,530.00.  Id. at ¶ 19. Following this proposal, Plaintiff continued to communicate with Defendant's area manager in an attempt to resolve the issues pertaining to Defendant's work at the Bakersfield Property.  Id. at ¶ 20.

To date, the Outside Area Floor at Plaintiff's Bakersfield Property suffers from holes where water ponds, the floor has blistered, the coloring has faded, and there are cracks.  Id. at ¶ 21.

Plaintiff filed its initial Complaint in California Superior Court on July 11, 2013 [1].  Defendant removed this Action to this Court on August 28, 2013 [1].

On October 7, 2013, Plaintiff filed its First Amended Complaint [9], alleging causes of action for: (1) Breach of Contract; (2) Breach of Implied Warranties; (3) Breach of Express Warranties; (4) Negligence; (5) Fraud; and (6) Violation of Cal. Bus. &

3

1  Profs. Code § 17200 et seq.   On December 6, 2013, the
2  Parties stipulated to dismiss Plaintiff's Fraud cause
3  of action [26].

## II.  Legal Standard

**A.  <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>**

6       Federal Rule of Civil Procedure 12(b)(6) allows a
7  party to move for dismissal of one or more claims if
8  the pleading fails to state a claim upon which relief
9  can be granted.  Dismissal can be based on a lack of
10 cognizable legal theory or lack of sufficient facts
11 alleged under a cognizable legal theory.  <u>Balistreri v.</u>
12 <u>Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
13 1990).   However, a party is not required to state the
14 legal basis for its claim, only the facts underlying
15 it.  <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214,
16 1223 (9th Cir. 1990).   In a Rule 12(b)(6) motion to
17 dismiss, a court must presume all factual allegations
18 of the complaint to be true and draw all reasonable
19 inferences in favor of the non-moving party.  <u>Klarfeld</u>
20 <u>v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

21      The question presented by a motion to dismiss is
22 not whether the plaintiff will prevail in the action,
23 but whether the plaintiff is entitled to offer evidence
24 in support of its claim.  <u>Swierkiewica v. Sorema N.A.</u>,
25 534 U.S. 506, 511 (2002).   "While a complaint attacked
26 by a Rule 12(b)(6) motion to dismiss does not need
27 detailed factual allegations, a plaintiff's obligation
28 to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation omitted).  Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

### III.  Discussion

**A.  <u>Choice of Law</u>**

Defendant contends that New Jersey law is applicable to this Action because the Contract includes a clause providing that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey." Mot. 4:24-28; FAC Ex. A. p.6.  Plaintiff argues that California law should apply because California has a materially greater interest in the litigation.  Opp'n 5:15-16.

A federal court sitting in diversity applies the forum state's choice of law principles to determine the body of substantive law that applies to its interpretation of a contract.  See Welles v. Turner Entm't Co., 503 F.3d 728, 738 (9th Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)); Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (citing Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002)).  As such, this Court applies California law to determine the controlling substantive law.

California has adopted the approach taken in the Restatement (Second) of Conflicts § 187 for interpreting a contractual choice of law provision. See Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65 (1992); Gramercy Inv. Trust v. Lakemont Homes Nevada, Inc., 198 Cal. App. 4th 903, 909 (2011). Under this approach, "the court must first determine: '(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.'" Washington Mutual Bank v. Superior Court, 24 Cal. 4th 906, 916 (2001) (quoting Restatement (Second) of Conflict of Laws § 187(2)).  If either test is met, "the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." Id. If there is not a conflict, then the court must enforce the

parties' choice of law.  _Id._  If there is a conflict, then the court must "determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'"  _Id._

"[T]he mere fact that one of the parties to the contract is incorporated in the chosen state is sufficient to support a finding of" a substantial relationship or a reasonable basis for choosing that state for the parties' choice of law.  _Application Group v. Hunter Group_, 61 Cal. App. 4th 881, 899 (1998); _see also_ _Maxim Crane Works, L.P. v. Tilbury Constructors_, 208 Cal. App. 4th 286, 292 (2012); _cf._ Restatement (Second) of Conflict of Laws § 187 cmt. f. As Defendant is incorporated in New Jersey (_see_ FAC ¶¶ 2-3), a reasonable basis exists for the Parties' choice of New Jersey law.

Because a reasonable basis exists for the Parties' choice, the burden shifts to Plaintiff to show that a fundamental policy of California would be impaired by application of New Jersey law to this Action and that California has a materially greater interest in the determination of the issue.  _Maxim Crane Works_, 208 Cal. App. 4th at 292 (quoting _Washington Mutual Bank_, 24 Cal. 4th at 917; citing _1-800-Got Junk? LLC v. Superior Court_, 189 Cal. App. 4th 500, 515 (2010)).

Plaintiff appears to acknowledge that application of New Jersey law would not violate a fundamental policy of California.  _See_ Opp'n 4:26-28.  Although

application of New Jersey law would undermine
Plaintiff's Unfair Competition cause of action, such is
not enough to violate a fundamental California policy.
See Century 21 Real Estate LLC v. All Prof'l Realty,
Inc., 889 F. Supp. 2d 1198, 1217 n.15 (E.D. Cal. 2012)
(citing Abat v. Chase Bank USA, N.A., 738 F. Supp. 2d
1093, 1096 (C.D. Cal. 2010)); see also Medimatch, Inc.
v. Lucent Techs., Inc., 120 F. Supp. 2d 842, 861-62
(enforcing choice of law provision designating New
Jersey law, holding that applying New Jersey consumer
protection law did not violate a fundamental policy of
California).  Moreover, as Defendant points out, both
California and New Jersey have adopted similar
provisions of the UCC applicable to this Action.
Compare Cal. Com. Code §§ 2316, 2716 with N.J.S.A. §§
12A:2-316, 12A:2-719.  As Plaintiff fails to identify
any other fundamental California policy violated by
application of New Jersey law, this Court enforces the
choice of law provision.

Plaintiff cites to Cardonet, Inc. v. IBM, Case No.
C-06-06637 RMW, 2007 U.S. Dist. 14519 (N.D. Cal. Feb.
14, 2007) for the proposition that this Court should
apply the test for materially greater interest merely
because application of New Jersey law would cause its
California statutory claims to fail.  Opp'n 4:26-5:3.
It is unclear why Plaintiff looks to Cardonet for
support as the Cardonet court did not apply the
materially greater interest test.  Cardonet, 2007 U.S.

8

1    Dist. 14519, at *11-17.

2        Because Plaintiff has failed to show that a
3    fundamental California policy would be impaired by
4    enforcing the Contract's choice of law provision, this
5    Court applies New Jersey law to this Action.

6    **B.   Real Party in Interest**

7        Under Fed. R. Civ. P. 17(a)(1), "[a]n action must
8    be prosecuted in the name of the real party in
9    interest."  While the "Ninth Circuit has not reached
10   the issue, district courts have permitted parties to
11   raise Rule 17 objections in the context of a motion to
12   dismiss under Rule 12(b)(6)." Runaj v. Wells Fargo
13   Bank, 667 F. Supp. 2d 1199, 1205 n.6 (S.D. Cal. 2009).
14   Though the court in Plaintiff's cited case, Neighbors
15   v. Mortg. Elec. Registration Sys., Case No. C 08-5530
16   PJH, 2009 U.S. Dist. LEXIS 5302, at *4-5 (N.D. Cal. Jan
17   27, 2009), held that "[a] challenge to a party's status
18   is brought as an objection under Rule 17(a)(3)," it
19   nevertheless considered the issue as a motion to
20   dismiss under Fed. R. Civ. P. 12(b)(1).  In other
21   words, notwithstanding Plaintiff's arguments otherwise
22   (see Opp'n 6:1-17), Defendant's argument is properly
23   before this Court.

24       Defendant argues that Plaintiff is not the real
25   party in interest because the Contract is addressed to
26   "Mr. Massimo Freda" of "Langer Juice" and subsequent
27   change orders were signed by Mr. Freda of "Langer
28   Farms, LLC."  Mot. 5:16-22 (citing FAC Exs. A-B).

1   Consequently, Defendant contends that Langer Farms, LLC
2   is the proper party. Id. at 5:23-24.  Plaintiff argues
3   that it is clear that Defendant inadvertently left off
4   "Company Inc." after "Langer Juice," and that any
5   ambiguity in the Contract should be interpreted against
6   Defendant.  Opp'n 7:3-16.  In response, Defendant
7   simply avers that such argument is irrelevant and that
8   Plaintiff has failed to show how its rights to the
9   Contract were assigned from Langer Farms, LLC.  Reply
10  4:22-5:8.  Consequently, Defendant maintains that
11  Langer Farms, LLC is the proper plaintiff.  Id. at 5:6-
12  8.

13      As a preliminary matter, "[w]here an ambiguity
14  appears in a written agreement, the writing is to be
15  strictly construed against the draftsman." In re
16  Estate of Miller, 90 N.J. 210, 221, 447 A.2d 549, 555
17  (1982); Kotkin v. Aronson, 175 N.J. 453, 455, 815 A.2d
18  962, 963 (2003).  In this instance, given the ambiguity
19  concerning the name of the contracting party and
20  because Defendant drafted the Contract, the Contract's
21  term should be construed against Defendant to be
22  "Langer Juice Company, Inc."

23      Even accepting Defendant's argument that Langer
24  Farms, LLC is a contracting party to the Contract,
25  Defendant fails to explain why Plaintiff could not sue
26  as a third party beneficiary to the Contract.  "A
27  plaintiff asserting third party beneficiary status must
28  establish that the contract was 'made for the benefit

10

of that third party within the intent and contemplation of the contracting parties.'" Grand Street Artists v. Gen. Elec. Co., 19 F. Supp. 2d 242, 253 (D.N.J. 1998) (quoting Grant v. Coca-Cola Bottling Co., 780 F. Supp. 246, 248 (D.N.J. 1991)).  In this case, not only does the Contract expressly specify Plaintiff's the Bakersfield Property (see FAC Ex. A p.2), but the Contract is also addressed to Mr. Massimo Freda of Langer Juice (see id.).  The change orders similarly reference the Bakersfield Property.  See FAC Ex. B. Additionally, Defendant's April 18, 2013 letter specifies the "Langer Juice Facility" as the beneficiary of the Stonhard work.  FAC Ex. C.  In other words, even where Defendant purported to deal with Langer Farms, LLC, the parties to the Contract still explicitly contemplated and fully intended for the Contract to benefit the Langer Juice facility.  As such, in the alternative, Plaintiff has standing to sue as a third party beneficiary of the Contract.

Finally, even assuming that Defendant was correct in that Plaintiff is not the real party in interest, Fed. R. Civ. P. 17(a) specifically provides for the joinder of the real party in interest.  Specifically, Rule 17 provides that "[t]he court *may not* dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the

action." Fed. R. Civ. P. 17(a)(3) (emphasis added).
In other words, even assuming, *arguendo*, that
Defendant's arguments had merit, this Court would still
deny Defendant's request to dismiss this matter with
prejudice.

The Court thereby finds that Plaintiff is a real
party in interest in the instant matter and has
standing to pursue the suit.

**C.   Breach of Implied Warranties**

Defendant argues that Plaintiff cannot state a
claim for breach of implied warranties because: (1)
Article 2 of the UCC does not apply to the Contract and
(2) even if Article 2 were applicable, all implied
warranty claims were disclaimed under the Contract.
Mot. 6:14-17.

Article 2 of the UCC "applies to transactions in
goods." N.J.S.A. 12A:2-102 (West). "Goods" are
defined as "all things (including specially
manufactured goods) which are movable at the time of
identification to the contract for sale other than the
money in which the price is to be paid, investment
securities and things in action." N.J.S.A. 12A:2-
105(1) (West).

Under New Jersey law, "[w]hen a contract is for
goods and services, a court must determine which aspect
of the contract, the goods or the services,
predominates." <u>Paramount Aviation Corp. v. Gruppo
Agusta</u>, 288 F.3d 67, 72 (3d Cir. 2002) (citing

1  Integrity Material Handling Sys., Inc. v. Deluxe Corp.,
2  317 N.J. Super. 406, 722 A.2d 552, 555 (N.J. Super. Ct.
3  App. Div. 1999)).  "In making this determination, a
4  court must examine the whole transaction and look to
5  the essence or main objective of the parties'
6  agreement."  Id. (citing Tele-Radio Sys. Ltd. v. De
7  Forest Elec., 92 F.R.D. 371, 374 (D.N.J. 1981).
8  Typically, New Jersey courts "look to the language and
9  circumstances surrounding the contract, the
10 relationship between the goods and services, the
11 compensation structure, and the intrinsic work of the
12 goods provided."  Dilorio v. Structural Stone & Brick
13 Co., Inc., 368 N.J. Super. 134, 142, 845 A.2d 658, 662-
14 663 (N.J. Super. Ct. App. Div. 2004) (quoting Integrity
15 Material Handling Sys., Inc. 722 A.2d at 555); Conopco,
16 Inc. v. McCreadie, 826 F. Supp. 855, 868 (D.N.J. 1993);
17 Quality Guaranteed Roofing, Inc. v. Hoffman-La Roche,
18 Inc., 302 N.J. Super. 163, 166-67, 694 A.2d 1077, 1079-
19 80 (N.J. Super. Ct. App. Div. 1997).

20      Defendant asserts that the UCC does not apply to
21 the Contract because it predominantly provided for the
22 installation of a floor coating system, not the sale of
23 a good.  Mot. 7:13-14.  Plaintiff contends that the
24 goods aspect predominates because, as shown by the
25 December 10, 2012 change order, Plaintiff purchased a
26 mortar system for $11,900.00.  Opp'n 8:25-28.
27 Plaintiff notes that the original contract price was
28 $21,255.00.  Id. at 8:25.

1       The Court finds that this case is analogous to
2   <u>Quality Guaranteed Roofing</u>, 302 N.J. Super. 163, 694
3   A.2d 1077.  In <u>Quality Guaranteed Roofing</u>, the court
4   reversed a trial court's application of the UCC to a
5   contract, finding that a contract for the installation
6   of a roof was primarily one for services, not for
7   goods.  <u>Id.</u> at 168.  The contract in question regarded
8   the installation of foam roofing on defendant's
9   building.  <u>Id.</u> at 164.  After discovering alleged
10  quality deficiencies in plaintiff's work, defendant
11  suspended all remaining work and payments and refused
12  to let plaintiff bid on the repair work and did not
13  demand that plaintiff perform any repairs.  <u>Id.</u>  The
14  trial court found in favor of plaintiff, holding that
15  the UCC applied to the contracts.  <u>Id.</u> at 165.  The
16  appellate court reversed.  <u>Id.</u>  The court reasoned that
17  "[w]hile the roofing materials and the installation
18  service were inextricably linked to one another, the
19  purchase of the roofing material was merely incidental
20  to the dominant purpose of the contract: the
21  installation of the roof."  <u>Id.</u> at 167.  "The goods
22  aspect of the contract," the court found "were [sic]
23  simply to foster the dominant purpose of the contract,
24  to wit, the construction of a new roof."  <u>Id.</u>
25      Similarly, in <u>Dilorio</u>, the court found that a
26  contract for the construction of a home – and
27  incidentally the installation of a stone facade in his
28  home – was one either in real property or for services,

14

not one for the sale of goods.  368 N.J. Super. at 141, 845 A.2d at 662-663.  In particular, the court reasoned that the "price paid by plaintiff to the builder included the value of the stone and labor costs associated with its installation," meaning that the goods aspect of the transaction "was, at most, incidental."  <u>Id.</u> at 142, 663.

Here, the Parties entered into a contract for the installation of a floor coating system.  The Contract calls for the installation of "[a] four component, trowel applied mortar system consisting of a urethane-urea binder, pigments, powders and quartz aggregates." FAC Ex. A p.2.  In fact, the Contract consistently refers to the "scope of work" and to the "contract work," implying that the Contract was for the service of installing Defendant's products as well as the actual materials that constitute Defendant's products. <u>Id.</u> at p.2-6.  Additionally, the original price quotation assumes, <i>inter alia</i>: (1) "non-union labor," (2) mechanical preparation of the floor, (3) a single, continuous installation.  <u>Id.</u> at p.3.  Moreover, the Contract price quotations are not itemized and appear to include the value of the material and labor costs associated with installation.  This is particularly apparent in the January 29, 2013 change order wherein the scope of the work was changed to remove the alleyway and to "reallocate the revenue, material, and labor for [the alleyway] to the covered pad areas."

FAC Ex. B p.10.

In other words, the Contract appears to call for Defendant's installation of a floor coating system at the Bakersfield Property.  Plaintiff was not merely purchasing Defendant's floor coating products, but also calling for Defendant to install its products at the Bakersfield Property.  Just like the contracts in <u>Quality Guaranteed Roofing</u> and <u>Dilorio</u>, the Court finds that the goods aspect of this Contract was merely incidental to the primary purpose of the Contract.  As such, the Court holds that the Contract was primarily one for services, not for goods.  Consequently, Article Two of the UCC does not apply to the Contract.  Correspondingly, because "[t]he commercial warranty provisions found in Article Two of the U.C.C. apply only to 'transactions in goods,'" and because the Contract was not primarily a goods transaction, Plaintiff's claim for breach of implied warranties must fail.  <u>Paramount Aviation Corp.</u>, 288 F.3d at 72.  Accordingly, the Court dismisses Plaintiff's second cause of action for breach of implied warranties.

Furthermore, the Court should find that Plaintiff cannot allege further facts to cure its breach of implied warranties claim because the Contract states that it "shall constitute the entire Agreement between the parties."  FAC Ex. A p.6.  Consequently, the Court **DISMISSES** Plaintiff's claim for breach of implied warranties **without leave to amend**.

16

1    Because the Court finds that the Contract is
2  primarily one for services and not for goods, and
3  because the Court should find that Article 2 of the UCC
4  does not apply to the Contract, it need not decide
5  whether the Contract's disclaimer language validly
6  disclaims all other warranties.

7  **D.   <u>Negligence and Fraud</u>**

8    Defendant contends that Plaintiff's claims for
9  Negligence and Fraud are barred by the economic loss
10 doctrine.  Mot. 9:13-15.  Plaintiff avers that the
11 economic loss doctrine does not apply where a
12 defendant's tort causes damage to "other property."
13 Opp'n 10:26-11:2.  Plaintiff contends that it has
14 sufficiently alleged damage to "other property."  <u>Id.</u>
15 at 11:18-20.

16   Because this Court has already dismissed
17 Plaintiff's Fraud claim pursuant to the Parties'
18 stipulation [26, 30], the Court need not address
19 arguments made with respect to that claim.

20   Under New Jersey law, "[g]enerally, the economic
21 loss doctrine prohibits plaintiffs from recovering in
22 tort economic losses to which they are entitled only by
23 contract."  <u>Arcand v. Brother Int'l Corp.</u>, 673 F. Supp.
24 2d 282, 308 (D.N.J. 2009) (citing <u>Saltiel v. GSI</u>
25 <u>Consultants, Inc.</u>, 170 N.J. 297, 310, 788 A.2d 268, 272
26 (2002)).  The purpose of the doctrine "'is to strike an
27 equitable balance between countervailing public
28 policies[] that exist in tort and contracts law.'"

Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d
238, 244 (3d Cir. 2010) (quoting Dean v. Barrett Homes,
Inc., 406 N.J. Super. 453, 470, 968 A.2d 192, 202 (N.J.
Super. Ct. App. Div. 2009) rev'd, 204 N.J. 286, 8 A.3d
766 (2010)); see also Spring Motors Distrib., Inc. v.
Ford Motor Co., 98 N.J. 555, 579-80, 489 A.2d 660, 672
(1985).

Furthermore, "[u]nder New Jersey law, a tort remedy
does not arise from a contractual relationship unless
the breaching party owes an independent duty imposed by
law." Saltiel, 170 N.J. at 316, 788 A.2d at 280
(citing New Mea Constr. Corp. v. Harper, 203 N.J.
Super. 486, 493, 497 A.2d 534, 538 (App. Div. 1985);
Int'l Minerals and Mining Corp. v. Citicorp N. Am.,
Inc., 736 F. Supp. 587, 597 (D.N.J. 1990)). As a
result, generally speaking, "[t]he economic loss
doctrine 'bars a plaintiff from recovering purely
economic losses suffered as a result of a defendant's
negligent or otherwise tortious behavior, absent proof
that the defendant's conduct caused actual physical
harm to a plaintiff or his property.'" Ayala v.
Assured Lending Corp., 804 F. Supp. 2d 273, 284 (D.N.J.
2011) (quoting Pub. Serv. Enter. Grp., Inc. v.
Philadelphia Elec. Co., 722 F. Supp. 184, 193 (D.N.J.
1989)).

Plaintiff alleges, primarily, that as a result of
Defendant's negligence, it has suffered damages,
"including but not limited to, the costs of repair,

18

lost profits, and related expenses." FAC ¶ 48. These
damages appear to be purely economic losses. See
Spring Motors, 98 N.J. at 566, 489 A.2d at 665
("Economic loss can take the form of either direct or
consequential damages. A direct economic loss includes
the loss of the benefit of the bargain . . .
Consequential economic loss includes such indirect
losses as lost profits."). The damages Plaintiff
alleges here are entirely consequential to Defendant's
alleged failure to install a floor coating system
meeting the Contract's standards. Furthermore, these
damages do not involve any physical harm to Plaintiff
or its property. As a result, the Court holds that the
economic loss doctrine bars Plaintiff's recovery for
these damages.

However, Plaintiff avers that it *has* alleged actual
physical harm to other property so as to avoid
triggering the economic loss doctrine. See Opp'n
12:15-24. In particular, Plaintiff contends that it
has alleged damages to "fruit, including . . . peaches
and strawberries, were [sic] physically destroyed as
said fruit likely rotted" because Plaintiff "was unable
to install strawberry and peach processing lines." Id.
at 12:18-22. Plaintiff also analogizes this case to
Nucal Foods, Inc. v. Quality Egg LLC, 918 F. Supp. 2d
1023 (E.D. Cal. 2013). Id. at 11:18-12:14.

In Nucal Foods, plaintiff was a supplier of eggs to
retail customers. 918 F. Supp. 2d at 1029. The

plaintiff purchased eggs from defendant through a
commercial exchange. Id. at 1026. In August 2010, an
outbreak of salmonella enteritidis triggered a massive
recall of eggs. Id. at 1025. The plaintiff sued the
defendant for alleged misrepresentations and omissions
regarding defendant's compliance with federal egg
safety rules. Id. at 1026. As a result of defendant's
conduct, plaintiff alleged that it suffered losses not
limited to those involving defendant's contaminated
eggs. Id. at 1028. In particular, plaintiff alleged
that it suffered losses with respect to eggs sourced
from other egg producers, plaintiff's product cartons,
and plaintiff's packaging materials. Id.

The court held that the economic loss rule did not
apply because the plaintiff adequately alleged damage
to property other than contractual property. Id. at
1029. Specifically, plaintiff alleged that it packaged
defendant's eggs with those from other suppliers. Id.
The court thus inferred that eggs with different
origins were recalled together and that some portion of
those eggs and packing materials recalled were not
related to defendant's eggs. Id. And, because the
court also inferred that these recalled eggs and
packaging materials were physically destroyed, the
court also held that it was plausible that other
property was destroyed because of defendant's
negligence. Id.

Unlike the plaintiff in Nucal Foods, however,

20

Plaintiff here has not alleged any purchase of other property that could have been physically damaged by Defendant's allegedly negligent conduct.  Rather, Plaintiff has simply alleged that it was unable to "meet production deadlines and install strawberry and peach processing lines" (FAC ¶ 21), not that it had actually purchased peaches and strawberries in anticipation of installing these processing lines. Without such an averment, even drawing all reasonable inferences in Plaintiff's favor, this Court finds that Plaintiff has not alleged that Defendant's allegedly negligent conduct caused physical damage to other property.  Klarfeld, 944 F.2d at 585.  Accordingly, the Court **DISMISSES** Plaintiff's fourth cause of action for negligence.  However, because the Court finds that Plaintiff could allege further facts to cure its negligence claim, the Court dismisses Plaintiff's negligence claim **with leave to amend.**

**E.   Violation of Business & Professions Code § 17200 et seq.**

As discussed, *supra*, New Jersey law applies to the Contract because its application would not violate a fundamental policy of California.  As a result, the Court find that the selection of New Jersey law bars Plaintiff's California statutory claims as a matter of law.  See Abat, 738 F. Supp. 2d at 1096; Medimatch, 120 F. Supp. 2d at 862 (dismissing California UCL claim with prejudice where it enforced a choice of law

1   provision designating New Jersey law).  The Court
2   therefore **DISMISSES** Plaintiff's sixth cause of action
3   for violation of California's Business & Professions
4   Code § 17200 et seq.  Furthermore, the Court should
5   also find that Plaintiff cannot possibly cure its claim
6   by alleging further facts as its claim is barred as a
7   matter of law.  Consequently, the Court should dismiss
8   Plaintiff's claim **without leave to amend**.
9   **F.   Limitation of Remedies Clause**
10       Defendant contends that because the Contract
11  expressly limits remedies to the repair of defective
12  areas, Plaintiff's claims for damages should be
13  dismissed.  Mot. 13:1-7.  Plaintiff, in turn, contends
14  that the limitation of remedies clauses are
15  unconscionable and should not be enforced.  Opp'n
16  17:14-18:14.
17       The Contract contains a clause limiting Defendant's
18  liability.  Specifically, it states that "The parties
19  acknowledge that in the event repairs need to be
20  performed to the contract work, [Defendant's] liability
21  shall be limited to furnishing the labor and the
22  materials necessary to reinstall the defective areas."
23  FAC Ex. A p.5.  The clause further provides that
24  "[Defendant] shall not be responsible for any
25  consequential or incidental damages resulting from any
26  breach of warranty."  Id.  The warranty section
27  similarly includes a limitation of remedies clause.
28  That clause reads:

1        LIMITATION OF REMEDY.  As to any products that

2        were defectively manufactured or installed

3        ("Warranty Issue") discovered on or before the

4        end of the warranty period, [Defendant's]

5        liability is limited to furnishing the labor and

6        materials necessary to repair the defective

7        area.  Such repairs are [Plaintiff's] exclusive

8        remedy and the limit of liability of

9        [Defendant], regardless of [Plaintiff's]

10       damages, including incidental and consequential

11       damages, and regardless of any legal theory,

12       including tort, contract, and strict liability.

13       IN NO EVENT SHALL [DEFENDANT] OR THEIR

14       SUBCONTRACTORS OR SUPPLIERS, BE LIABLE FOR ANY

15       SPECIAL, INCIDENTAL, EXEMPLARY, OR CONSEQUENTIAL

16       DAMAGES.

17 _Id._

18    In New Jersey, "[i]t is fundamental that parties to

19 a contract may allocate risk of loss by agreeing to

20 limit their liability as long as the limitation does

21 not violate public policy." _Chem. Bank of New Jersey_

22 _Nat'l Ass'n v. Bailey_, 296 N.J. Super. 515, 526–27, 687

23 A.2d 316, 322 (N.J. Super. Ct. App. Div. 1997) (citing

24 _Moreira Constr. Co. v. Moretrench Corp._, 97 N.J. Super.

25 391, 394, 235 A.2d 211, 213 (N.J. Super. Ct. App. Div.

26 1967)); _see also_ _Morgan Home Fashions, Inc. v. UTI,_

27 _U.S., Inc._, No. CIV.A.03-0772 JLL, 2004 WL 1950370, at

28 *8 (D.N.J. Feb. 9, 2004) (holding that an exculpatory

clause in a customs broker contract limiting damages to
$50 per shipment was enforceable); Marbro, Inc. v.
Borough of Tinton Falls, 297 N.J. Super. 411, 417, 688
A.3d 159, 162-63 (N.J. Super. Ct. Law Div. 1996)
(holding that the New Jersey version of the UCC
"permits limitation of remedies in contracts in sales
of goods unless the remedy is unconscionable or causes
the contract to fail its essential purpose"). Courts
still scrutinize such clauses "to ensure that their
enforcement is just." Morgan Home, 2004 WL 1950370, at
*4. In this vein, such clauses cannot protect a party
from its gross negligence or be unconscionable. Id.
(citing Tessler and Son, Inc. v. Sonitrol Sec. Sys. of
N. New Jersey, Inc., 203 N.J. Super. 477, 483, 497 A.2d
530, 533 (N.J. Super. Ct. App. Div. 1985); Carter v.
Exxon Co. U.S.A., 177 F.3d 197, 207 (3d Cir. 1999)).

    "Under New Jersey law, unconscionability cases
'look for two factors: (1) unfairness in the formation
of the contract, and (2) excessively disproportionate
terms." Travelodge Hotels, Inc. v. Honeysuckle
Enters., 357 F. Supp. 2d 788, 801 (D.N.J. 2005)
(quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J.
Super. 555, 564, 800 A.2d 915, 921 (Ch. Div. 2002)).
These two factors have been referred to as "procedural"
unconscionability and "substantive" unconscionability.
Id. "Procedural unconscionability includes, among
other things, various inadequacies like age, literacy,
and lack of sophistication." Id. Other indicia of

procedural unconscionability include "hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."  Muhammad v. County Bank of Rehoboth Beach, Delaware, 189 N.J. 1, 15, 912 A.2d 88, 96 (2006) (quoting Sitogum, 352 N.J. Super. at 564-66, 800 A.2d at 921).  Substantive unconscionability, on the other hand, "describes an exchange of promises that is so one-sided as to 'shock the conscience' of the court.  Travelodge Hotels, 357 F. Supp. 2d at 801. Finally, New Jersey "[c]ourts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." Delta Funding Corp. v. Harris, 189 N.J. 28, 40, 912 A.2d 104, 111 (2006).

     The Court finds that Plaintiff has not sufficiently alleged procedural unconscionability with respect to the limitation of remedies clauses in the Contract.

     First, the Court finds that the Contract is not an adhesion contract.  "[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except on a few particulars." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681, 685-86 (1992).  While the Contract appears to be in standardized form, the Court

notes that the Contract specifically allows for
Plaintiff to negotiate its terms.  In particular, the
Contract reads "If this proposal meets with your
approval please initial the appropriate line(s) above,
sign below and fax to my attention.  *Or if you prefer
to utilize your own Purchase Order*, please reference
Quote #4098502 and send a copy to my attention."  FAC
Ex. A p.6 (emphasis added).  The Contract also allows
Plaintiff to contact Defendant's representative with
any questions and, ostensibly, with any further
negotiations.  Id.  Plaintiff, in other words, was not
forced to accept the Contract.

Second, the Court finds that Plaintiff has failed
to allege any other indicia of procedural
unconscionability.  There is, for example, no
indication that there is a great disparity in
bargaining power or sophistication between the Parties.
Rather, both Parties appear to be relatively
sophisticated commercial parties.  See FAC ¶¶ 1-3.
While Plaintiff correctly notes that the limitation of
remedies portion of the Contract is in smaller,
unbolded type, this is insufficient, in and of itself,
to show procedural unconscionability.  See Jones v. The
Chubb Institute, CIV A 06-4937 KSH, 2007 WL 2892683
(D.N.J. Sept. 28, 2007).  The text in the limitation of
remedies provision is not so small as to be unreadable
and the term explicitly disclaiming liability for
special, incidental, exemplary, and consequential

26

damages is capitalized and prominent.  FAC Ex. A p.5.

Likewise, the Court finds that Plaintiff has failed to allege substantive unconscionability in the limitation of liability and limitation of remedies clauses.  As discussed, *supra*, exculpatory clauses in commercial contracts are routinely enforced under New Jersey law and are specifically provided for in the New Jersey UCC.  <u>See</u> N.J.S.A. 12A:2-719.

Because Plaintiff has failed to show procedural or substantive unconscionability, the Court finds that the limitation of remedies and limitation of liability clauses may be enforced.  As a result, the Court **GRANTS** Defendant's Motion to Dismiss with respect to Plaintiff's claims for damages.  However, because Plaintiff could potentially cure its theory of unconscionability by alleging more facts, the Court should allow Plaintiff **leave to amend**.

### IV.   Conclusion

For the reasons set forth above, this Court **GRANTS** Defendant's Motion to Dismiss [10].

Specifically, the Court:

1.   **DISMISSES** Plaintiff's second cause of action for breach of implied warranties **without leave to amend**;

2.   **DISMISSES** Plaintiff's fourth cause of action for negligence **with twenty days leave to amend**;

//

//

27

3.   **DISMISSES** Plaintiff's sixth cause of action for
     violation of California Business & Professions Code
     § 17200 et seq. **without leave to amend**; and

4.   **DISMISSES** Plaintiff's claims for damages **with
     twenty days leave to amend**.

**IT IS SO ORDERED.**

DATED: January 30, 2014

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge